UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

RHONDA HAMBRICK and
GEORGE F. HAMBRICK, III,

**Plaintiffs,**

v.                                          4:14-cv-12

CITY OF SAVANNAH, GEORGIA;
CHATHAM COUNTY, GEORGIA;
MICHAEL PEPLOW; MICHAEL
HAUN; and MICHAEL ROWAN,

**Defendants.**

## ORDER

### I. INTRODUCTION

Plaintiffs Rhonda Hambrick ("Mrs. Hambrick") and her son, George F. Hambrick, III ("Trey"), bring this action against the City of Savannah, Georgia, Chatham County, Georgia, Michael Peplow, Michael Haun, and Michael Rowan under 42 U.S.C. § 1983 for alleged violations of their constitutional rights. ECF No. 1-1 at 3. Plaintiffs also claim entitlement to relief under state tort law for false imprisonment, trespass, assault, battery, and intentional infliction of emotional distress. *Id.* at 2-3.

Defendants Peplow, Haun, and Rowan ("Officer Defendants") and Defendants City of Savannah and Chatham County ("Municipal Defendants") have moved for summary judgment. ECF Nos. 21-2; ECF No. 23-2.

For the reasons set forth below, the Court **GRANTS** the Municipal Defendants' and the Officer Defendants' motions for summary judgment.

### II. FACTS

On December 18, 2011, the Officer Defendants were investigating a call reporting increased traffic in an undeveloped area in the Ramsgate and Windsford neighborhood in Savannah, Georgia. ECF Nos. 23-1 at 4; 23-4 at 96. Trey and his friends refer to this undeveloped area as "the spot." ECF Nos. 21-7 at 7. Officer Peplow responded first and saw a red pickup truck that he believed to have been recently off-road leaving "the spot." ECF Nos. 21-1 at 3; 23-1 at 4-5; 23-4 at 13, 97. The Officer Defendants responded to 3 Devon Road after the red pickup truck was identified in the driveway. ECF Nos. 21-1 at 3; 23-4 at 97. They knocked on the door of the residence at 3 Devon Road in order to investigate as to why the red pickup had been off-road at "the spot." ECF Nos. 21-1 at 4; 23-1 at 6; 23-4 at 98.

Mrs. Hambrick answered the door and the Officer Defendants inquired as to who had been driving the red truck. ECF Nos. 21-1 at 4; 21-6 at 5; 23-1 at 6. She denied any knowledge regarding who was driving the truck or whom the truck belonged to. ECF Nos. 21-1 at 4; 21-6 at 5; 23-1 at 6. While Mrs. Hambrick was speaking with the Officer Defendants, Trey was standing behind her. ECF Nos. 21-1 at 4; 21-6 at 5; 23-1 at 7. The Officer Defendants asked Mrs. Hambrick if they could speak with Trey regarding his presence at "the spot," advising her that Officer Peplow had seen him driving the red truck away from "the spot" and that Officer Peplow had tried to

pull the truck over. ECF Nos. 21-1 at 4-5; 21-6 at 5-6; 21-7 at 13. 23-1 at 7. Trey denied that Officer Peplow had tried to pull the truck over. ECF No. 21-7 at 13.

The Officer Defendants then asked if they could speak with Trey outside regarding what he was doing at "the spot." *Id.* Mrs. Hambrick refused to allow the Officer Defendants to speak with Trey outside and demanded to know why he had to go outside. ECF Nos. 21-6 at 6; 21-7 at 13. The Officer Defendants advised Mrs. Hambrick that if she continued to interrupt their investigation they would arrest her for obstruction. ECF Nos. 21-1 at 5; 21-6 at 6; 21-7 at 13; 23-1 at 7; 23-4 at 99. After Mrs. Hambrick again interrupted the Officer Defendants, Officer Haun reached across the threshold of the doorway and placed her under arrest. ECF Nos. 21-1 at 5; 21-6 at 6; 21-7 at 13; 23-1 at 8; 23-4 at 100.

After Officer Haun arrested Mrs. Hambrick, Trey approached the door and Officer Rowan again asked him to step outside so that they could question him. ECF No. 21-1 at 6; 21-7 at 13; 23-1 at 8. Trey refused to leave the house and said that he would talk to the officers at the door. ECF Nos. 21-1 at 6; 21-7 at 13; 23-1 at 8. After Trey refused Officer Rowan's requests, Officer Rowan reached across the threshold and attempted to grab him. ECF Nos. 21-7 at 13; 23-1 at 8. Trey shoved Officer Rowan into the door. ECF No. 21-7 at 13. A struggle ensued between Trey and Officer Rowan, which continued until Officer Peplow returned to the house. ECF Nos. 21-1 at 6; 21-7 at 14-15; 23-1 at 9. At that point, Trey submitted to the officers and Officer Rowan placed him under arrest. ECF Nos. 21-1 at 6; 21-7 at 14-15; 23-1 at 9.

Plaintiffs filed this lawsuit alleging that the Officer Defendants' actions violated their constitutional rights and Georgia tort law. ECF No. 1-1.

## III. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on summary judgment, the Court views the facts and inferences from the record in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Reese v. Herbert*, 527 F.3d 1253, 1271 (11th Cir. 2008). Courts, moreover, may consider all materials in the record, not just those cited by the parties. Fed. R. Civ. P. 56(c)(3).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Reese*, 527 F.3d at 1268 (internal quotation marks omitted) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

The nonmoving party then "may not rest upon the mere allegations or denials of [its] pleading[s], but . . . must set forth specific facts showing that there is a genuine issue for trial." *Young v. City of Palm Bay, Fla.*, 358 F.3d 859, 860 (11th Cir. 2004). "A

genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Owen v. I.C. Sys., Inc.*, 629 F.3d 1263, 1270 (11th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is material only if it might affect the outcome of the suit under governing law. *See Anderson*, 477 U.S. at 248.

## IV. ANALYSIS

Plaintiffs seek relief under 42 U.S.C. § 1983, alleging violations of their civil rights, and under state tort law. ECF No. 1-1 at 1-2. The Officer Defendants have moved for summary judgment, arguing that they are entitled to qualified immunity as to Plaintiffs 42 U.S.C. § 1983 claims and that Plaintiff's tort law claims fail because they are entitled to sovereign and, alternatively, official immunity under Georgia law. ECF No. 21-2 at 16, 21. The Municipal Defendants have moved for summary judgment, arguing that they are entitled to sovereign immunity on Plaintiff's tort law claims under Georgia law and that they are not subject to suit under 42 U.S.C. § 1983 in this case. ECF No. 23-2 at 16, 20.

### A. Both the Municipal Defendants and the Officer Defendants Are Entitled to Summary Judgment on Plaintiffs' 42 U.S.C. § 1983 Claims

Plaintiffs bring claims against all Defendants under 42 U.S.C. § 1983, alleging that the Officer Defendants' actions violated their constitutional rights and that the Municipal Defendants made "a deliberate or conscious choice to decline instruct its officers in the proper procedure for arresting a citizen without a warrant." ECF No. 1-1 at 3. Both the Municipal Defendants and the Officer Defendants argue that they are entitled to summary judgment on these claims. ECF Nos. 21-1 at 7; 23-2 at 20. The Court agrees.

### 1. The Municipal Defendants Are Not Subject to Suit Under 42 U.S.C. § 1983 in This Case

The Supreme Court has held that, under 42 U.S.C. § 1983, "local governments can be held liable [only] for constitutional torts caused by official policies." *Carter v. City of Melbourne, Fla.*, 731 F.3d 1161, 1166 (11th Cir. 2013) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). Plaintiffs allege that the Municipal Defendants made a deliberate choice to decline to properly train officers in the proper procedure for conducting warrantless arrests, thus establishing an official policy as grounds for 42 U.S.C. § 1983 liability. ECF No. 1-1 at 3.

Failure to train officers regarding avoidance of violating constitutional "rights may rise to the level of an official government policy for purposes of § 1983" only in limited circumstances. *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011). Specifically, the Eleventh Circuit has determined that "[a] failure to adequately train municipal employees constitutes an actionable policy or custom for § 1983 'only where the failure to train amounts to deliberate indifference to the rights of persons with whom the [officers] come into contact.'" *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d

3

1092, 1116 (11th Cir. 2005) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). To be sure, a plaintiff's entitlement to relief under 42 U.S.C. § 1983 is "most tenuous where a claim turns on a failure to train." *Connick*, 131 S. Ct. at 1359. This is because courts place an "intentionally onerous" burden on plaintiffs seeking relief against municipalities pursuant to a failure-to-train theory of liability as any "lesser standard of fault would result in de facto respondeat superior liability on municipalities." *Gold v. City of Miami*, 151 F.3d 1346, 1351 n.10 (11th Cir. 1998) (emphasis omitted) (quoting *Harris*, 489 U.S. at 391-92) (internal quotation marks omitted).

In order to prove the requisite fault for municipal liability in failure-to-train claims under 42 U.S.C. § 1983, the plaintiff cannot nakedly assert deliberate disregard. Rather, the plaintiff must come forth with "'. . . proof that a municipal actor disregarded a known or obvious consequence of his action.'" *Connick*, 131 S. Ct. at 1360 (quoting *Bd. of Cnty. Commr's of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 410 (1997)). Plaintiffs can meet this onerous burden either by showing an official policy endorsing the constitutional violations complained of, or by showing that the municipality had a custom or practice of allowing such violations and that custom or practice caused constitutional injuries. *See Craig v. Floyd Cnty., Ga.*, 643 F.3d 1306, 1310 (11th Cir. 2011) (citing *Grech v. Clayton Cnty., Ga.*, 335 F.3d 1326, 1330 (11th Cir. 2003) (en banc)).

Here, unsurprisingly, Plaintiffs have been unable to point to an official Savannah-Chatham Metropolitan Police policy endorsing unconstitutional warrantless arrests. Indeed, in response to the Municipal Defendants' request for a copy of the specific policy that Plaintiffs allege endorses constitutional violations, Plaintiffs referred the Municipal Defendants to an Internal Investigation Report finding that the Officer Defendants *violated* official policies. *See* ECF No. 23-7 at 11, 13.

In the absence of such a policy, Plaintiffs must come forth with evidence of a custom or practice allowing such unconstitutional practices. In order to establish such a custom or practice, proof of a pattern of similar unconstitutional conduct generally is required. *Craig*, 643 F.3d at 1310. Here, Plaintiffs have not produced even a single incident of prior similar unconstitutional activity.

Accordingly, Plaintiffs have failed to establish the requisite fault on the part of the Municipal Defendants to impose liability under 42 U.S.C. § 1983. Therefore, the Municipal Defendants are entitled to summary judgment on Plaintiffs' § 1983 claims.

### 2. The Officer Defendants Are Entitled to Qualified Immunity Under 42 U.S.C. § 1983

In response to Plaintiffs' 42 U.S.C. § 1983 claims, the Officer Defendants argue that they are entitled to qualified immunity. The Court agrees.

Under the doctrine of qualified immunity, an official performing discretionary functions is entitled to immunity "unless he both (1) violates

4

clearly established law and (2) was aware or reasonably should have been aware that he was doing it." *Brannon v. Finkelstein*, 754 F.3d 1269, 1278 (11th Cir. 2014). Thus, by protecting "'all but the plainly incompetent or those who knowingly violate the law,'" the doctrine of "[q]ualified immunity gives government officials breathing room to make reasonable but mistaken judgments" *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2085 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

As a threshold matter, "[i]n order to receive qualified immunity, the public official 'must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'" *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (quoting *Courson v. McMillan*, 939 F.2d 1479, 1487 (11th Cir. 1991)) (internal quotation marks omitted). Here, the Officer Defendants were acting in their discretionary functions when they arrested Plaintiffs. *Id.* (finding it clear that an officer acts within his discretionary capacity when arresting a suspect).

Thus, the "burden shifts to the [Plaintiffs] to show that qualified immunity is not appropriate." *Id.* In order to carry this burden, Plaintiffs generally must satisfy a two-step test. *Id.* Plaintiffs must first show that, under their version of the facts, the Officer Defendants violated a constitutional right. *Id.* If Plaintiffs satisfy the first step, "the court must then determine whether the right was clearly established." *Id.* (internal quotation marks omitted) (citing *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001)). However, this two-step process is not mandatory. For instance in certain, fact-dependent situations "a discussion of why the relevant facts do not violate clearly established law may make it apparent that in fact the relevant facts do not make out a constitutional violation at all." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

"A federal right is 'clearly established' when 'the contours of [the] right are sufficiently clear that every reasonable official would have understood what he is doing violates that rights.'" *Kopperud v. Mabry*, ___ F. App'x ___, 2014 WL 3703983, at *1 (11th Cir. July 28, 2014) (alteration in original) (quoting *al-Kidd*, 131 S. Ct. at 2083). To determine whether or not a right was clearly established in this case, the Court looks to the decisions of the Supreme Court, the Eleventh Circuit, and the courts of Georgia. *See Saunders v. Duke*, ___ F.3d ___, 2014 WL 4403045, at *2 (11th Cir. Sept. 8, 2014).

### a. Plaintiffs' Arrests

Plaintiffs first allege that the Officer Defendants violated their Fourth Amendment rights by arresting them without a warrant. *See* ECF No. 1-1 at 1-2. In general, "a warrantless arrest made without probable cause violates the Fourth Amendment and is actionable under section 1983." *Kopperud*, 2014 WL 370398, at *1 (citing *Ortega v. Christian*, 85 F.3d 1521, 1525 (11th Cir. 1996)).

"To receive qualified immunity [for a warrantless arrest], an officer need not have actual probable cause, but only arguable probable cause." *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 734 (11th Cir. 2010). "Arguable probable cause exists where 'reasonable officers in the same

5

circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest Plaintiff[s].'" *Id.* (quoting *Kingsland v. City of Miami*, 382 F.3d 1220, 1232 (11th Cir. 2004)). The existence of arguable probable cause depends on the elements of the relevant alleged crime and the facts of each individual case. *Id.* Where the material facts are undisputed, the question of whether arguable probable cause exists is a question of law and is thus proper for resolution on summary judgment. *See Howell v. Sheriff of Palm Beach Cnty.*, 349 F. App'x 399, 402-05 (11th Cir. 2009) (upholding a district court's denial of summary judgment where disputes as to factual basis for officer's probable cause existed); *see also Sharple v. Raley*, 153 F. App'x 624, 626 (11th Cir. 2005) (concluding that "'whether it would have been clear to an objectively reasonable officer that [the officer's] conduct was unlawful'" is a question of law) (quoting *Vaughan v. Cox*, 343 F.3d 1323, 1332 (11th Cir. 2005)).

Here, both Plaintiffs were arrested for obstructing a police investigation in violation of O.C.G.A. 16-10-24. *See* ECF No. 23-4 (police report). In Georgia, any "person who knowingly and willfully obstructs or hinders any law enforcement officer in the lawful discharge of his official duties is guilty of a misdemeanor." O.C.G.A. 16-10-24(a). The Officer Defendants argue that they had at least arguable probable cause to arrest Plaintiffs for obstruction of an officer. ECF No. 21-2. They are correct.

Here, it is undisputed that Plaintiffs did not cooperate with the Officer Defendants' investigation. Indeed, according to their own deposition testimony, Plaintiffs repeatedly interrupted the Officer Defendants and refused to comply with their instructions as they were investigating Trey's presence at "the spot." *See* ECF Nos. 21-6 at 5-7; 21-7 at 13. Despite orders to stop interrupting and warnings that if they did not comply they would be arrested, Plaintiffs continued to disrupt the Officer Defendants' investigation. In Georgia on the night of Plaintiffs' arrests, it was well established that "[r]efusing to comply with an officer's command [was] sufficient to form the basis of an obstruction charge." *Townsend v. Coffee Cnty.*, 854 F. Supp. 2d 1345, 1358 (S.D. Ga. 2011) (citing several Georgia Court of Appeals cases).

Accordingly, it is clear that the Officer Defendants had at least arguable probable cause to arrest Plaintiffs and are therefore entitled to qualified immunity as to the arrests. Further, the discussion of why the relevant facts do not violate clearly established law here compels the conclusion that the Officer Defendants' actions did not violate Plaintiffs' constitutional rights. Therefore, the Officer Defendants are entitled to summary judgment on Plaintiffs' 42 U.S.C. § 1983 claims seeking relief for their allegedly unlawful arrest.

b. **The Officer Defendants' Warrantless Entry into Plaintiffs' Home**

Plaintiffs also allege that the Officer Defendants violated their Fourth Amendment rights by entering Plaintiffs' residence without a warrant or legal justification. ECF No. 1-1 at 2. The Fourth

6

Amendment prohibits warrantless arrests in the home in the absence of probable cause and exigent circumstances. *Welsh v. Wisconsin*, 466 U.S. 740, 741 (1984). "The exigent circumstances exception [to the warrant requirement] recognizes a 'warrantless entry by law enforcement officials may be legal when there is compelling need for action and no time to secure a warrant.'" *United States v. Holloway*, 290 F.3d 1331, 1334 (11th Cir. 2002) (quoting *Michigan v. Tyler*, 436 U.S. 499, 509 (1978)). Courts have recognized several exceptions to the warrant requirement for in-home arrests, including the "hot pursuit" exception. *Id.* at 1334-35. The "hot pursuit" exception allows police officers to "enter premises without a warrant when they are in hot pursuit of a fleeing suspect." *Kentucky v. King*, 131 S. Ct. 1849, 1856 (2011).

Here, the Officer Defendants had probable cause to arrest Plaintiffs while Plaintiffs were standing in the doorway to their home, a public place. "While it may be true that under the common law of property the threshold of one's dwelling is 'private,' . . . it is nonetheless clear that under the cases interpreting the Fourth Amendment [Plaintiffs were] in a public place." *United States v. Santana*, 427 U.S. 38, 42 (1976). Plaintiffs voluntarily opened the door to their residence after the Officer Defendants knocked, something the Officer Defendants were entitled to do. *See King*, 131 S. Ct. at 1862 ("When law enforcement officers who are not armed with a warrant knock on a door, they do no more than any private citizen might do."). Plaintiffs were under no obligation to open the door, *id.*, but when they did, they exposed themselves to the public "as if [they] had been standing completely outside [their] house." *See Santana*, 427 U.S. at 42.

Thus, when the Officer Defendants, supported by probable cause, initiated the arrest by asking Plaintiffs to step outside, they did nothing more than what the Supreme Court has held the Fourth Amendment allows—i.e., conduct a "warrantless public arrest[] on probable cause." *United States v. Watson*, 423 U.S. 411, 423 (1976). The fact that Plaintiffs refused to step over the threshold of the doorway does not affect the lawfulness of the Officer Defendants' actions. "[A] suspect may not defeat an arrest which has been set in motion in a public place . . . by the expedient of escaping to a private place." *Santana*, 427 U.S. at 43. Likewise, Plaintiffs here were not entitled to raise the threshold of their residence as a barrier to frustrate the Officer Defendants' otherwise lawful arrest.

That the Officer Defendants had probable cause to arrest Plaintiffs for only a minor offense does not compel a conclusion that the Officer Defendants are not entitled to qualified immunity. To be sure, "the gravity of the underlying offense for which the arrest is being made" is "an important factor" in assessing whether an exigency exists. *Welsh*, 466 U.S. at 753. However, such consideration is but one factor for officers to weigh in making on-the-spot decisions to arrest persons suspected of committing crimes. *See United States v. Standridge*, 810 F.2d 1034, 1037 (11th Cir. 1987) (setting out five, non-exhaustive factors indicating exigent circumstances).

Although "application of the exigent-circumstances exception in the context of a home entry should rarely be sanctioned when there is probable cause to believe that only a minor offense . . . has been committed," *Welsh*, 466 U.S. at 753, the Court cannot say that the Officer Defendants' actions here violated *clearly established* constitutional principles. To be sure, at least one case decided at the time of the Officer Defendants' actions indicated that warrantless home entries to make arrests for minor offenses violate Fourth Amendment principles. *See Frias v. Demings*, 823 F. Supp. 2d 1279, 1288 (M.D. Fla. 2011). However, there is no law explicitly holding that probable cause to arrest for only a minor offense invariably cannot provide the requisite exigency to justify a warrantless entry into a suspect's home. *See Bash v. Patrick*, 608 F. Supp. 2d 1285, 1300 (M.D. Ala. 2009) (noting that "[t]here [were] few cases that decide whether the entry of a residence incident to hot pursuit of a subject the pursuing officers have probable cause to believe committed a minor . . . violation" and concluding that the few cases that existed "predominantly support[ed] the constitutionality of the home entry"). Indeed, the Court of Appeals of Georgia has explicitly upheld the application of the "hot pursuit" doctrine to cases involving misdemeanor traffic offenses. *See, e.g., State v. Nichols*, 484 S.E.2d. 507, 509 (Ga. Ct. App. 1997).

The relevant question for the Court to answer in assessing the applicability of qualified immunity is not whether the particular alleged unlawful acts comported with the Constitution, but whether the particular acts actually violated clearly established law. For purposes of qualified immunity, clearly established law means "beyond debate." *See Stanton v. Sims*, 134 S. Ct. 3, 7 (2013). While the Court is not sanctioning the Defendant Officers' actions here, with these standards in mind and given the lack of clear precedent proscribing the Officer Defendants' actions, the explicit application of the "hot pursuit" doctrine to misdemeanor offenses in Georgia courts, and the inconsistent position taken in persuasive jurisdictions, the Court cannot say that the officers were acting "plainly incompetent[ly]" or "knowingly violat[ing] the law" so as to lose the protection of qualified immunity. *See Malley*, 475 U.S. at 341.

Accordingly, the Officer Defendants are entitled to qualified immunity with regard to their brief, warrantless entry into Plaintiffs' home to effectuate arrests for crimes committed in public. Even if Plaintiffs did suffer a constitutional injury from the Officer Defendants' warrantless entry into their home, the Officer Defendants' actions did not violate clearly established law. The Officer Defendants are therefore entitled to summary judgment as to Plaintiffs' 42 U.S.C. § 1983 claims arising from their warrantless entry into Plaintiffs' home.

c. **Plaintiffs' Excessive Force Claims**

Third, and finally, Plaintiffs allege that the Officer Defendants used excessive force in effectuating the arrests at issue. ECF No. 1-1 at 3. In excessive force cases, the Eleventh Circuit has concluded that qualified immunity applies unless "every

8

reasonable officer" would agree that the officer defendant used unlawful force relative to the situation he faced. *See Nolin v. Isbell*, 207 F.3d 1253, 1255 (11th Cir. 2000). It is inevitable that officers must use some force in order to arrest a suspect. *See Graham v. Connor*, 490 U.S. 386, 396 (1989) ("Our Fourth Amendment jurisprudence has long recognized the right to make an arrest . . . necessarily carries with it the use of some degree of physical coercion or threat thereof to effect it."). Therefore, "application of de minimis force, without more, will not support a claim for excessive force in violation of the Fourth Amendment." *See Nolin*, 207 F.3d at 1257.

According to Mrs. Hambrick's deposition testimony, Officer Haun grabbed Mrs. Hambrick's hands, put them behind her back, and pushed her into the back of a patrol car. ECF No. 21-6 at 6-7. Such minimal use of force when conducting an arrest "will not defeat an officer's qualified immunity in an excessive force case." *See Nolin*, 207 F.3d at 1258.

According to Trey's deposition testimony, Officer Rowan attempted to grab his arm and, after Trey resisted, wrestled him to the ground, put him in handcuffs, and dragged him out of the house. ECF No. 21-7 at 14-15. The Eleventh Circuit has concluded that similar use of force is de minimis and lawful. *See Durruthy v. Pastor*, 351 F.3d 1080, 1094 (11th Cir. 2003).

Accordingly, the Officer Defendants are entitled to qualified immunity with regard to Plaintiffs' excessive force claims under 42 U.S.C. § 1983 and are therefore entitled to summary judgment on those claims.

## B. Both the Officer Defendants and the Municipal Defendants Are Immune From Suit Under Georgia Tort Law

Under Georgia law, both the Officer Defendants and the Municipal Defendants are immune from tort liability in this case.

### 1. The Municipal Defendants Are Immune From Suit Based on the Conduct of Police Officers

Sovereign immunity protects both counties and municipal corporations in Georgia. Ga. Const. Art. 1, § 2, para. 9(e); O.C.G.A. §§ 36-33-1(a), 36-1-4. Counties and municipalities remain immune from suit unless the General Assembly specifically, and expressly, waives such immunity. *See Weaver v. City of Statesboro*, 653 S.E.2d 765, 767 (Ga. 2007); *Scott v. City of Valdosta*, 634 S.E.2d 472, 475 (Ga. Ct. App. 2006). So long as the General Assembly has not waived immunity, "[a] municipal corporation shall not be liable for the torts of policemen . . . engaged in the discharge of the duties imposed on them by law." O.C.G.A. § 36-33-3. Sovereign immunity is not an affirmative defense, thus the Plaintiff shoulders the burden of establishing a waiver of immunity. *E.g., Banks v. Happoldt*, 608 S.E.2d 741, 744 (Ga. Ct. App. 2004).

Here, Plaintiffs allege that the Officer Defendants illegally arrested them and seek relief from the Municipal Defendants for torts allegedly suffered during the course of the arrest. ECF No. 1-1 at 2-3. However, Georgia law is clear that "'[a] municipal corporation is not liable . . . for the illegal

9

arrest of a citizen by one of [its] police officers . . . . For such arrest [only] the officer himself [may be] liable.'" *Acker v. City of Elberton*, 336 S.E.2d 842, 844 (Ga. Ct. App. 1985) (quoting *Cook v. Mayor & Council of Macon*, 54 Ga. 468, 468 (1875)). Similarly, sovereign immunity bars tort claims against counties arising out of alleged illegal arrests. *See Presnell v. Paulding Cnty., Ga.*, 454 F. App'x 763, 769 (11th Cir. 2011) (citing *Gilbert v. Richardson*, 452 S.E.2d 476, 479 (1994)). These same principles bar Plaintiffs from proceeding against the Municipal Defendants on a theory of respondeat superior. *See Gilbert*, 452 S.E.2d at 484 ("A county may be liable for a county employee's negligence in performing an official function *to the extent the county has waived sovereign immunity*.") (emphasis added)).

No statute waives county immunity in Georgia for the tort claims Plaintiffs advance. *See id.* at 479 (finding that the Georgia Tort Claims Act "expressly excludes counties from the ambit of [its] waiver"). Further, the General Assembly has expressly provided for municipality immunity for the torts of police officers engaged in their official duties. O.C.G.A. § 36-33-3. Plaintiffs have provided no evidence that the Officer Defendants were not engaged in duties imposed by law. *See Scott*, 634 S.E.2d at 477. Accordingly, sovereign immunity bars both direct and vicarious recovery from the Municipal Defendants based on torts arising out of the Officer Defendants' alleged illegal arrest.

2. **Official Immunity Bars Plaintiffs' Tort Claims Against the Officer Defendants**

The Officer Defendants argue that they are entitled to sovereign immunity with regard to Plaintiffs' state law claims. ECF No. 21-2 at 21. They are not.

Sovereign immunity bars suits against state and municipal officers only if they are sued in their official capacity. This is because "[s]uits against public employees in their official capacities are in reality suits against the state and, therefore, involve sovereign immunity." *Cameron v. Lang*, 549 S.E.2d 341, 346 (Ga. 2001) (quotation omitted). Here, because the Officer Defendants are individually named in Plaintiffs' complaint and because Plaintiffs' complaint seeks punitive damages under 42 U.S.C. § 1983, Plaintiffs have sued the Officer Defendants in their individual capacity and they are therefore not entitled to sovereign immunity. *See Young Apartments, Inc. v. Town of Juniper, Fla.*, 529 F.3d 1027, 1047-48 (11th Cir. 2008) (discussing similar factors and concluding that the officers there were sued in their individual capacities).

However, the Defendant Officers here are still immune to suit by virtue of official immunity. Under the Georgia Constitution, except as otherwise provided by the General Assembly, "all officers and employees of the state or its departments and agencies shall not be subject to suit or liability, and no judgment shall be entered against them, for the performance or nonperformance of

their official functions." Ga. Const. Art. 1, § 2, Para. 9(d).

Official acts are those "act[s] performed within the officer's . . . scope of authority." *Gilbert*, 452 S.E.2d at 483. Officers can be liable for performance of discretionary acts only if performed with malice or intent to injure. *Id.* The Supreme Court of Georgia has determined that "a discretionary act is one that requires the examination of facts and the exercise of considered judgment before deciding on a course of action." *Common Cause/Ga. v. City of Atlanta*, 614 S.E.2d 761, 764 (Ga. 2005) (quotation omitted). The process of investigating a complaint and the decision to make an arrest are discretionary actions. *Reese v. City of Atlanta*, 583 S.E.2d 584, 585 (Ga. Ct. App. 2003).

Here, Plaintiffs seek relief under tort law alleging that the Officer Defendants illegally arrested them. ECF No. 1-1 at 2-3. In doing so, Plaintiffs argue that the Officer Defendants acted unreasonably and that they intentionally entered Plaintiffs' home. *Id.* at 3. However, Plaintiffs do not allege that the Officer Defendants acted with malice or intent to injure. "Even if, as [Plaintiffs] argue[], the [Officer Defendants'] investigation and decision to arrest were flawed, the [Officer Defendants'] decisions remained discretionary." *Reese*, 583 S.E.2d at 585.

Thus, in the absence of evidence that the Officer Defendants acted with malice or the intent to injure, they are entitled to summary judgment on Plaintiffs' tort claims. *See id.*

## V. CONCLUSION

For the reasons set forth above both the Municipal Defendants and the Officer Defendants are entitled to summary judgment. Plaintiffs' 42 U.S.C. § 1983 claims against the Municipal Defendants fail, because they are not subject to suit under that section here. Further, though the Court is not endorsing all of the Officer Defendants' actions here, those actions did not violate clearly established principles of law and, therefore, the Officer Defendants are entitled to qualified immunity as to Plaintiffs' 42 U.S.C. § 1983 claims. Further, sovereign immunity protects the Municipal Defendants from Plaintiffs' tort claims and official immunity does the same for the Officer Defendants.

Accordingly, the Court **GRANTS** the Municipal Defendants' and the Officer Defendants' motions for summary judgment.

This 29 day of September 2014.

B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA